May it please the Court, my name is Douglas Nelson on behalf of the petitioner. There are two reasons that we are here today. First, the immigration judge erred, as a matter of law, when he decided that the petitioner's claim was not credible because the petitioner's father mistakenly recorded that the petitioner was in Turkey in 1997. Now, the petitioner testified that he never made it to Turkey. It was his intention to go there in order to flee persecution, but it was too cold and too dangerous to take his family across the border. The father thought he was coming, but he never made it to that country. In support of that contention, the petitioner presented the father's own testimony, and the father testified, I thought, I assumed, my son had made it to Turkey. The father's presumption was well-founded in the fact that he knew the petitioner went to Zakho, which is on the northern border of Iraq next to Turkey, and the only reason a Christian whose fleeing persecution would go to Zakho would be to enter Turkey. So the father's presumption was reasonable, but it was incorrect, and the father even said so, that he had made a mistake when he recorded that his son was in Turkey. This testimony is further corroborated by the petitioner's wife and the petitioner's brother, who all testified that the petitioner never made it to Turkey. Now, either these four individuals are lying to the immigration judge or the immigration judge is wrong. It's important to note that the immigration judge, though, found that the petitioner's father was a credible witness. To me, and under the law, substantial evidence shows that the petitioner never made it to Turkey, and that the petitioner's family testified he never made it to Turkey, and that he resumed his life in Iraq and remained there for many years later until the situation became so bad that he had to leave the country. What's the significance of whether he stayed in Turkey or did not? The immigration judge believes that if he was in Turkey in 1997, then everything thereafter is thrown into doubt. The petitioner's contention that he went back to Iraq and that he was harmed again, that he was caught again in Iraq and accused of being a traitor and supporting the north, is all in doubt. But that is directly contradicted by substantial evidence in the testimony of other persons. The petitioner did indeed return from the north of Iraq and resume his life in Iraq. That is the only inconsistency which the judge relied upon in order to deny asylum, and that is not supported by substantial evidence. The second reason that the immigration judge denied asylum was because he found that the petitioner circumvented orderly refugee procedures. In order to make this finding, the judge has to presume that the petitioner knew such orderly procedures existed. What we know is that the petitioner knew his father applied for refugee status while in Greece. That's all we know about the petitioner's knowledge of orderly refugee procedures. And we know that the petitioner never made it to Greece. He couldn't go through the northern route of Iraq to Turkey or to Greece. But rather, the situation became so bad in Iraq, he had to flee through other means. He obtained false Iraqi passports. He took his family out of the country, went from Jordan to Russia to Cuba to El Salvador, all the while being handled by a smuggler until he reached Guatemala. And what did he do in Guatemala? He attempted to apply for refugee status. When he became aware that there existed a possibility of... Did he go to the U.S. Embassy in Guatemala? That's correct, Your Honor. He was denied entry because he did not have a legal Iraqi passport. And so his only other option... What year was that? 2000, I believe, Your Honor. I believe it was 2000. He was denied entry. And by the way, the judge says, well, he went through all these countries and he did not avail himself of the opportunity to apply for refugee status. Well, look at the countries that he went through. Russia, Cuba, El Salvador. Not countries that are necessarily known for protecting human rights. But when he arrived in Guatemala, he did make the attempt, and he was denied entry. And there was no inconsistencies or implausibilities or anything raised that would contradict what the respondent testified to. When he was denied entry into the embassy in Guatemala, he proceeded north through Mexico, and he was arrested by Mexican immigration officials and detained for over a month. And they gave him the choice of leaving with... Obviously, he could not return to Iraq. And he had family in the United States, so the logical choice was to come to the U.S. border. If you prevail on this, don't you have a big hurdle about the change of conditions in Iraq? Well, there are two things to mention about that. And I expect that this will be litigated in the future if we prevail. Was that concerned at the time? It wasn't a concern at the time of the decision. But there's two points regarding that very quickly. First of all, an alien can qualify for asylum despite a change in country conditions if they show that they suffered atrocious past persecution and it would be inhumane to return them. And those are the facts of this case. This man suffered a lifetime of harassment, detentions, and beatings. Well, he's Christian, right? Correct. So, I mean, what would be the status if he were? I mean, yes, country conditions have changed, but there's still... Well, and that's the second point. If we have to litigate that issue, I have dozens upon dozens of articles which show that Christians are being specifically targeted by Muslim terrorists. And so that's an issue, if this court grants the petition, will be litigated. But none of those articles and none of that information is before the court at this time. Back to whether the petitioner circumvented orderly refugee procedures. In fact, he did use orderly refugee procedures in order to enter the United States. There exists, under the Immigration and Nationality Act, a procedure through which you come to the border, you announce you're afraid of returning to your country, you're given a credible fair interview by an asylum officer who determines whether your claim is credible or not, and then refers you to an immigration judge if it is credible. If it is not credible, then you can have a judicial review of that or you can be deported. Those procedures exist for a reason, because our country knows that people come to our borders and request asylum, and they are orderly procedures which the judge completely ignored in his decision. Also, we have to look at the totality of the circumstances here. Under a Board precedent decision, the matter of Pula, that case states, and the judge is bound by that ruling, that you have to look at everything, every reason why the alien, or how the alien arrived in the United States. It states that the danger of persecution should generally outweigh all but the most egregious of adverse factors. What adverse factors do we have here? We have a petitioner who's fled his country with an illegal smuggler, which is serious, but remember why was he compelled to take that action. The judge presumes that his travels through all these countries to America was a simple matter, when in fact the respondent was risking his life and his family's lives in order to get here. It was not a simple thing. I have a minute and a half left, and I'd like to reserve that time for rebuttal. Thank you. Good morning, Your Honor. Senora Oski, of course, for the Department of Justice. Respondent Alberto Gonzalez, it's always a privilege and a pleasure to be here, and a challenge, and especially today to appear before you in the circuit. This is a tough case. I've appeared before Judge Siler in the Sixth Circuit. Oh, okay. It's a tough case because of the sympathies, but not because of the law. In this case, and first of all, let's put it in perspective, the family has been granted withholding of removal, so changed country conditions are a factor here. They don't have to go back until someone makes the affirmative determination that it's safe for them to return, that the father's opposition to the Ba'ath Party will no longer put them at risk. So they are protected under the Convention Against Torture. Their claim has been recognized. But they were found primarily because of the lack of credibility to not have established a well-founded fear of persecution. And the reason, and it's clear in the record, there's more than one story. There's an explanation for everything. But the fact is, there is more than one story. And because there are two stories in the record, the evidence cannot compel that the story more than one story. What is the other story, other than the fact that he said he'd return her to Iraq? Well, okay. First of all, he'll make a case. And he and his family all said that. Right. But there, it's just, it's sort of an opaque claim in the sense that he says, as counsel just expressed, his family, he was fleeing for his life. His family would be killed. He risked their lives. Yet in 1997, he decided to go back because it was too cold to travel. If you're really going to go back. Was it his decision it was too cold to travel, or the person that was going to assist him across the border? He said that the smuggler said, it's too cold. All right. And that was enough for them. And he didn't want to take them across, his family. And Petitioner accepted this. Instead of, he doesn't say, I argued with him. I insisted. I was too afraid to go back. He says, fine. It's too cold. I'll go back. Yet in Guatemala, he testified that he crossed mountains and valleys. Could he have gone anyway if the smuggler was unwilling to take them? We don't know that, Your Honor. That's not on the record. We can only speculate. It sure seems likely that if he engaged the smuggler and the smuggler said, I'm not going to take your family across because it's too cold, they couldn't go. Why not? He doesn't say that what prevented him. He just said this person was not said, I won't help you. And he said, fine. I'll go back and face persecution again until the weather's better. That's what's in the record. However, and the issue about seeking asylum, he was turned away from the embassy. Again, this is, you know, the excuses are a little bit opaque. The embassy said, go to the U.N. and apply for refugee status, as in fact his father had applied. You keep saying these things are opaque. What's the legal standard you're using here? Okay. Well, it's not opaque. It's just the evidence compel the conclusion that his excuse overcomes the immigration judge's finding. What do you mean by excuse? The immigration judge said. Explanation? Yes. Are you talking about his explanation? It's not his excuse. It's his explanation. All right. And there's a legal standard here and it's not opaque. You're right, Your Honor. It's does the evidence compel the conclusion that his explanation for not going to apply at the U.N. when he was directed to go there by the American embassy in Guatemala compels the conclusion that he did not go because he didn't know about it or he was turned away, which is what he says in his brief. Well, now we're getting away from Turkey. I'd like to have you continue to explain why, with all that testimony, it's reasonable for the ALJ or the immigration judge to find that he was in Turkey instead of back in Iraq. Okay. Let me just finish one sentence about the embassy thing, if I may. He was told to go to the U.N. Well, we're on the subject of Turkey. Okay. Let's get to that first. Well, his parents now, his father left at the same time. Again, I know it's not the standard, but his father says, well, we were all in the same town at the same time. I assumed he went and, therefore, he wrote in a document, which he signed, my son is in Turkey. But he explained it. He took the stand and explained that he didn't know. Absolutely, Your Honor. So, again, there are two stories here. The immigration judge and the father. No story. There was a document. There was a document, which was signed under oath. The father did not say, I believe my son to be in Turkey. The father said, my son is in Turkey. He said that as an absolute. He didn't say, last time I saw him at the border, he was on his way to Turkey. But he took the stand and said it was a mistake. I didn't know. Well, that's where the credibility comes in. The immigration judge. Well, he found the father credible. Well, the immigration judge also said the adverse credibility is a very difficult and, he said, almost impossible finding to make under the laws of the Ninth Circuit. Did he or did he not find the father credible? He found the father credible. All right. So we've got the father's testimony that this was a mistake. Yes. And the father did say it was a mistake. However, he made the other statement under oath also. One of them is a mistake. Both of them are under oath. The immigration judge believed him, but he gave one story under oath. Was that the one that the immigration judge was compelled to believe, or was he compelled to believe the other story that was given under oath? And, again, as he explained, the family has been together. They had six months between continuances to decide, say, well, you know, let's find a spin on this. Let's develop another story. And, again, it's not considered perjury. It's considered embellishment and enhancement in an immigration case. It's not considered perjury. And that's when the claim evolves, it's not considered perjury. It's considered enhancement and embellishment. And that's what's happening here. It's enhanced and it's embellished. It's sort of hard for me to see how this is embellishment. Either he was in Turkey or he was in Iraq. That's right. If he testified he was in Iraq, it's pretty hard to say that wouldn't be perjury if, in fact, he was in Turkey. I absolutely agree. But as the immigration judge found, I'm going to listen to your story and give you the benefit of the doubt. I'll find you credible, but I'm not going to believe everything you say. And that was the essence of the immigration judge's decision. Does this, whether he went into Turkey or not, does it go to the heart of his claim? It does because one of the incidents in which he was harmed occurred at the time that his father and his sister declared under oath that he was in Turkey. And that's why it does go to the heart of his claim. But the other problem with that is he was considered to be credible. Yes. Would you say that he didn't suffer persecution? Oh, I don't. Surely he suffered persecution for all the things that happened, right? Yes, Your Honor. But then you have to establish the nexus. He was harmed when he was in the military because a delivery was not made, and he was and mistreated until it was proven that he was not responsible for the mail that was not delivered, and then he was released and returned to his duties. Yes, he was held for a whole month and beaten during that time, kicked and everything, while he was blindfolded. It seems like a pretty clear persecution. Yes, it is. And the second time he was in jail, they broke his hand, and he had to be hospitalized for three days after that. There's no doubt that that was persecution. However, there's the next step. You have to relate it to a statutorily protected ground. The first time he wasn't being harmed because he was Christian or because he opposed the Ba'ath Party. He was being harmed because mail was gone missing and he was responsible for the mail. When the mail was found, he was released. What happened to him is horrible. It's not condoned. It is persecution, but he hasn't established that it was on account of a statutorily protected ground. The same thing for the second detention. He was suspected of being a spy because apparently that area is filled with spies, and he was questioned about that. He hasn't established that it wasn't because of the suspicion, but because of his imputed political opinion for his failure to join the Ba'ath Party, that he was questioned for a month. And then he was released on payment of a large bribe. And all his encounters were the same. Kennedy, wouldn't that be a public opinion? If he were harmed on account of it. But he hasn't established that. He's established that people would come to his store and take his goods. And then he also testified that he would travel frequently to this area, which for some reason put him under suspicion. He doesn't explain exactly why going to that area would make him suspect, but he did concede that that would make it was an area that was suspicious, and therefore they thought he might be a spy, and they questioned him about him. The manner of questioning was absolutely uncondonable and inhumane. However, it does not establish that he was questioned because of his opposition to the Ba'ath Party, but because they may have reasonably suspected that he was engaging in spy activities because he traveled there so frequently. And again, it's tough because it's a very, very sympathetic claim. It is the family, but they are not being returned to Iraq until conditions are such that they can return there safely without fear, and that could be forever. And they have not legal status in this country but the right to remain. All right. Why would it be fearful for them to return? Why would it be what? Why would it be now fearful from their standpoint to return? From anyone's standpoint, we're not returning anyone to Iraq at this point. I know, but what's the reason why you're not? Because of the turmoil that exists there. Just the turmoil, not the fact that he's a Chaldean Christian, huh? No. Okay. All right. Thank you, counsel. Thank you, Your Honor, for your time.  of stealing or not delivering the mail. He testified that they questioned him about his party affiliation, and they said, you are a Christian, you are a crusader, and you are against the government. So he did establish a nexus in that incident. This case nowhere near approaches the cases which this court has seen and this court has found not to be credible or sustain the IJ's findings of incredibility. In those cases, such as Singh-Kaur, this court has examined demeanor, implausibility, major inconsistencies, and whether the inconsistencies go to the heart of the claim. That doesn't exist in this case. There's simply no substantial evidence to establish that this client misrepresented the facts. On the contrary, there are several witnesses who confirm the events that happened to him after 1997 and establish that he indeed was in Iraq during that time. And in regards to withholding of removal, yes, he does have that protection, which if the judge had doubted his claim, he would not have granted. But he was given that protection. That protection is only temporary until it is safe in order to return him to Iraq. Our claim is that he has suffered so much and so tremendously that it would be inhumane to return him under any circumstances. And that's what we want litigated by the immigration judge. And that's why we want this petition granted. Thank you.
judges: Hug, Wardlaw, Siler